**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES G. CONNELL, III,<br>*Plaintiff*,<br>v.<br>DEPARTMENT OF STATE,<br>*Defendant*. | Civil Action No. 24-2030 (SLS)<br>Judge Sparkle L. Sooknanan |

# MEMORANDUM OPINION

James G. Connell, III brought this Freedom of Information Act (FOIA) lawsuit to compel the State Department to release certain records pertaining to the 1994 unrest and civil disturbance in Zahedan, Iran. The State Department has since produced the requested records. All that remains is a motion from Mr. Connell seeking $26,525.12 in attorney fees and costs. Because Mr. Connell has not established his eligibility for attorney fees and costs, the Court denies his motion.

## BACKGROUND

Mr. Connell is a criminal defense attorney who primarily handles death penalty cases. *See* Compl. ¶ 3, ECF No. 1; Decl. of James G. Connell, III ¶ 2, ECF No. 23-2. In May 2019, he submitted a FOIA request to the State Department, requesting records pertaining to anti-government unrest and civil disturbance in Zahedan, Iran in 1994. Pl.'s FOIA Request, Pl.'s Ex. 1, ECF No. 1-1. He sought expedited processing, explaining that he wanted to use the information for a pending criminal trial. *Id.* The State Department acknowledged his request 12 days later and assigned it a tracking number. Office of Information and Program Services Letter (May 22, 2019) at 1, Pl.'s Ex. 2, ECF No. 1-2. That same letter denied Mr. Connell's request for expedited processing and assigned his request to the complex processing track. *Id.* at 1–2. The letter

explained that Mr. Connell's request fell within the category of "unusual circumstances" as defined in 5 U.S.C. § 552(a)(6)(B)(i)–(iii), because his request required the agency to examine voluminous records and search in offices that were separate from the office processing his request. *Id.* at 2. As of September 2019, the State Department's internal case management system reflected that it was processing the request and that internal searches had begun. Declaration of Susan C. Weetman (Weetman Decl.) ¶ 21, ECF No. 25-1. For the next four years, Mr. Connell heard nothing from the State Department. Compl. ¶ 7.

In September 2023, Mr. Connell sent a letter to the State Department requesting an update. *Id.*; Certified Mail Receipt at 6, Pl.'s Ex. 3, ECF No. 1-3. But the State Department has no record of this letter. Weetman Decl. ¶ 22 n.4. In December 2023, Mr. Connell again requested an update, this time by email. Compl. ¶ 8; Status Update Email (Dec. 12, 2023), Pl.'s Ex. 4, ECF No. 1-4. The State Department responded three days later, confirming receipt. Compl. ¶ 8; Status Update Email Response (Dec. 15, 2023), Pl.'s Ex. 5, ECF No. 1-5. By December 20, 2023, the agency had conducted preliminary searches of its eRecords Archive on its classified and unclassified systems. *See* Weetman Decl. ¶ 24. In addition, because Mr. Connell's request sought records from decades prior, an analyst had recommended and assigned a search of the State Department's Retired Records Inventory Management System. *Id.* In January 2024, the State Department emailed Mr. Connell again to confirm that his request was being processed, to apologize for the delay, to explain that it was working through its backlog of FOIA requests, and to provide an estimated completion date of December 31, 2024. Compl. ¶ 9; Second Status Update Email Response (Jan. 2, 2024), Pl.'s Ex. 6, ECF No. 1-6.

In June 2024—in accordance with a broader initiative to reassess its backlog of pending FOIA requests—the State Department emailed Mr. Connell a form letter to inquire whether he

remained interested in his request. Compl. ¶ 10; Weetman Decl. ¶ 26; Backlog Email (June 24, 2024), Pl.'s Ex. 7, ECF No. 1-7. Mr. Connell replied two weeks later, expressing his continued interest in the records. Compl. ¶ 11; Backlog Email Response (July 5, 2024), Pl.'s Ex. 8, ECF No. 1-8.

One week after his response, in July 2024, Mr. Connell filed this lawsuit. *See generally* Compl. Following its standard process, the agency transferred Mr. Connell's request to the specialized Litigation and Appeals Office within the Information Access Programs Directorate. Weetman Decl. ¶¶ 16, 29. That Office completed the eRecords Archive and Retired Records Inventory Management System searches, locating 18 boxes of potentially responsive paper records. Weetman Decl. ¶ 30. Analysts then manually reviewed the estimated 36,000 pages of records, many of which contained classified records requiring off-site review. *Id.* ¶¶ 30–31.

Between September 2025 and February 2026, the agency produced records to Mr. Connell. *See* Joint Status Report (Jan. 23, 2026) ¶ 3, ECF No. 18; Joint Status Report (Mar. 5, 2026) ¶ 2, ECF No. 19. After unsuccessful attempts to resolve the remaining issue of attorney fees and costs, Mr. Connell filed the instant motion. *See* Mot. Att'y Fees (Mot.), ECF No. 23. He requests $26,525.12 in attorney fees and costs. *See* Mot. at 1 (seeking $16,950.00 in attorney fees and $425.12 in costs); Reply at 13, ECF No. 26 (adding $9,150.00 in attorney fees). The motion is now ripe for review. *See* Opp'n to Mot. (Opp'n), ECF No. 25.

**DISCUSSION**

Courts may award "reasonable attorney fees and other litigation costs reasonably incurred" in FOIA litigation. 5 U.S.C. § 552(a)(4)(E)(i). A FOIA plaintiff must demonstrate both "eligibility" and "entitlement" to fees and costs. *Brayton v. Off. of the U.S. Trade Repres.*, 641 F.3d 521, 524 (D.C. Cir. 2011). Eligibility is a "threshold inquiry." *McKinley v. Fed. Hous. Fin. Agency*, 174 F. Supp. 3d 220, 222 (D.D.C. 2012). To establish eligibility, a plaintiff must

demonstrate that it "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E). This requires a showing that either (1) the plaintiff obtained relief through a "judicial order, or an enforceable written agreement or consent decree," or (2) the plaintiff obtained a "voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial" (referred to as the "catalyst theory"). 5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II); *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (citation omitted). Only after a plaintiff establishes eligibility may "the court proceed[] to the entitlement prong[,]" where it "considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524.

Here, the Court's analysis starts and ends with eligibility, which Mr. Connell cannot establish. Relying on the catalyst theory, he argues that this lawsuit caused the State Department to disclose the relevant records because the agency produced records only after litigation began roughly five years after his request. *See* Mot. at 4–7. The State Department counters that the delay in production was justifiably attributed to a large backlog of FOIA requests, staffing limitations, the impact of COVID-19, and the complexity of Mr. Connell's request. *See* Opp'n at 5–8. It also emphasizes that it had confirmed that Mr. Connell's request was still in processing shortly before his lawsuit. *Id.* On this record, the State Department has the better argument.

The "key question" under the catalyst theory is "whether the institution and prosecution of the litigation caused the agency to release the documents obtained during the pendency of the litigation." *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 4 (D.D.C. 2011) (cleaned up). Whether a plaintiff has sparked this type of change is "largely a question of causation." *Mobley v. DHS*, 908 F. Supp. 2d 42, 46–47 (D.D.C. 2012) (quoting *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981)). A plaintiff must show "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Grand*

*Canyon Tr.*, 947 F.3d at 97 (quoting *Pub. Citizen Health Rsch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).

The D.C. Circuit has made abundantly clear that courts cannot infer causation simply because an agency discloses records after a lawsuit is filed. *See Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) ("[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."). A fee award is appropriate if release is due to "the threat of an adverse court order," not an "'unavoidable delay accompanied by due diligence in the administrative process[.]'" *Calypso Cargo Ltd.*, 850 F. Supp. 2d at 4 (quoting *Church of Scientology*, 653 F.2d at 588). Therefore, the catalyst theory requires courts to broadly "look at the circumstances surrounding disclosure," *Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381, 389 (D.D.C. 2018), and engage in a "necessarily fact-specific" inquiry, *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 205 (D.D.C. 2016)). For example, courts may consider factors "such as whether the agency made a good-faith effort to search out material and pass on whether it should be disclosed, whether the scope of request caused delay in disclosure, and whether the agency was burdened by other duties that delayed its response." *ACLU v. DHS*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011) (cleaned up). "At bottom, then, the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Conservation Force*, 160 F. Supp. 3d at 206.

Here, Mr. Connell fails to meet his burden. *First*, Mr. Connell claims that the State Department "lost track of his request" and only sprang into action when he filed his Complaint. Reply at 3. The record does not bear this out. The agency emailed Mr. Connell in January 2024 to report that his "request [wa]s still in process" and offer an estimated completion date of December 31, 2024. Second Status Update Email Response (Jan. 2, 2024); *see also Grand Canyon Tr.*, 947

F.3d at 97 (finding relevant that the government did not "suggest[] it would fail to comply with the request; to the contrary, both [agencies] gave the plaintiff their predictions as to when production would be completed"). Mr. Connell instead focuses on the agency's June 2024 letter asking whether he still wished to pursue his request, *see* Backlog Email (June 24, 2024), as evidence that his request was lost in the shuffle. But the State Department's declaration, which is afforded a "presumption of good faith," *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), clarifies that this letter was merely a "form letter in accordance with an initiative to reassess [the agency's] backlog of pending FOIA requests," Weetman Decl. ¶ 26.[1] And Mr. Connell responded to confirm his ongoing interest, which was the more likely catalyst for disclosure than the lawsuit that followed.[2]

*Second*, Mr. Connell fails to show that the agency engaged in an unexplained delay before he filed his lawsuit. It is true that a significant delay by the government in complying with FOIA may provide the "inference that the agency forgot about, or sought to ignore, a FOIA requester's request—and in such a case an award of [FOIA] costs and fees would be appropriate." *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016). However, "that inference is eroded, if not fully rebutted, when the agency provides an alternative explanation for the delay[.]" *First Look Media*

[1] The form letter erroneously states that the State Department had "not heard from Mr. Connell in the last several years." Backlog Email (June 24, 2024). But given the agency's description and explanation of the letter, that fact alone does not prove that the agency had lost track of the request.

[2] Mr. Connell primarily relies on *Church of Scientology*, 653 F.2d at 587–88, a case that illustrates why he is *not* eligible for fees and costs. There, the government maintained throughout the administrative processing and internal appeal process that only a small handful of documents fell within the scope of the FOIA request. *Id.* at 588. It was only after the plaintiff filed suit and began discovery that the government disclosed over 200 additional responsive documents. *Id.* In other words, the government had concluded its process, such that "but for the institution and prosecution of th[e] suit, the documents ultimately obtained . . . would never have been identified and therefore would never have been released." *Id.* Here, on the other hand, the January 2024 letter indicates that Mr. Connell's FOIA request remained open at the time of his lawsuit.

*Works, Inc. v. U.S. Agency for Glob. Media*, No. 20-cv-3499, 2024 WL 4262773, at *4; *see also Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing.").

> For example, an agency's delay in response until after a lawsuit is filed may be the result of factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors.

*Codrea v. ATF*, 272 F. Supp. 3d 49, 53–54 (D.D.C. 2017).

The State Department has pointed to many of those factors here. To start, it explained that the agency faced a significant backlog of FOIA requests during the relevant time-period. It had over 13,000 pending FOIA requests in 2019 and received over 8,000 additional requests that year alone. Weetman Decl. ¶ 36. And the number of annual requests more than doubled from 2019 to 2025. *Id.* Next, Mr. Connell's request was complex and involved unusual circumstances—something that the State Department relayed to him back in 2019. *See* Office of Information Programs and Services Letter (May 22, 2019). It required the agency to conduct an in-person, manual review of an estimated 36,000 pages of records—many of which required reviewers with heightened clearance status who could travel offsite. Weetman Decl. ¶¶ 30, 31. And the State Department has limited staff to conduct these reviews. *Id.* ¶ 31. Further, the COVID-19 pandemic limited the agency's ability to process FOIA requests for multiple years in which Mr. Connell's request was pending. *See id.* ¶¶ 36, 47–58. The agency went in and out of telework status for multiple years, hindering its ability to manually review the potentially responsive records in this

case. *Id.* ¶¶ 47–58.[3] Finally, in January 2024 the State Department issued an apology for its delay and offered Mr. Connell an estimated completion date. Taken together, the State Department's backlog, the complexities of the records sought, and the staffing issues exacerbated by the pandemic all explain the agency's delayed response. On this record, the Court cannot infer that the agency "forgot about[] or sought to ignore" Mr. Connell's request until he filed suit. *Harvey*, 178 F. Supp. 3d at 8.

*Finally*, the developments after Mr. Connell's lawsuit do not bolster his causal argument. Mr. Connell claims that his litigation spurred action because after he sued, the State Department "reassigned his request to a specialized unit" that completed the searches, identified the records, and performed the manual review. Reply at 3–4. But this "specialized team" merely "*continues* FOIA processing" for the subset of cases that enter litigation. Weetman Decl. ¶ 16 (emphasis added). The State Department followed its "standard approach" to transfer the case to the Litigation and Appeals Office, in order to "complete the processing that had begun prior to Plaintiff's filing of the complaint." *Id.* ¶ 29. In other words, the mere fact that a team familiar with litigation completed an existing process does not show that the lawsuit was the catalyst for production.

Mr. Connell also points out that because the State Department did not issue its first production until September 2025, it must never have intended to produce the records in December 2024 as estimated prior to his lawsuit. *See* Mot. at 5–6. But there is no basis in this record "to overcome the presumptive inference that [the State Department] responded in good faith to the

[3] While Mr. Connell appears to be correct that the paper files were not identified until after he filed his lawsuit, *id.* ¶ 28–30, the State Department knew that his request would require it to search different offices, *id.* ¶ 20, and ordered the retired records search prior to his lawsuit, *id.* ¶ 24. And the State Department has also shown that the pandemic interrupted its FOIA processing capabilities beyond merely reviewing in-person records. *Id.* ¶¶ 47–55.

plaintiff's FOIA request[]." *Inst. for Energy Rsch. v. Dep't of Treasury*, No. 22-cv-3653, 2024 WL 5118225, at *5 (D.D.C. Dec. 16, 2024) (cleaned up). And the fact that Mr. Connell did not receive any records until 14 months after his lawsuit *bolsters* the agency's argument that "disclosure result[ed] not from the suit but from delayed administrative processing." *Short*, 613 F. Supp. 2d at 106 (D.D.C. 2009).[4]

* * *

In closing, the Court acknowledges that Mr. Connell had to wait many years to receive records in response to his FOIA request. And it does not condone the State Department's lengthy period of silence or processing. But here, the agency explained that its delayed response was due to a significant backlog, staffing challenges associated with the COVID-19 pandemic, and the complex and unusual circumstances implicated by Mr. Connell's request. Additionally, the agency's January 2024 letter is clear evidence that Mr. Connell's request remained in process at the time that he filed his lawsuit. Therefore, Mr. Connell has not established "that it is more probable than not that the government would not have" released the documents "absent the lawsuit." *Grand Canyon Tr.*, 947 F.3d at 97 (quoting *Pub. Citizen Health Rsch. Grp*, 909 F.2d at 550). Because Mr. Connell cannot carry his burden under the catalyst theory, the Court need not inquire further. He is not entitled to attorney fees and costs.[5]

---

[4] This fact also undermines any potential causation argument based on "sudden acceleration." *See Student Borrower Prot. Ctr. v. U.S. Dep't of Educ.*, No. 23-cv-1780, 2025 WL 1373472, at *7 (D.D.C. May 9, 2025). Mr. Connell clearly cannot show that the State Department accelerated its response to his FOIA request when he received records after the agency's prior estimated delivery date.

[5] Because Mr. Connell failed to prove eligibility, the Court need not consider whether it should exercise its discretion to award reasonable attorney fees and costs. *See Grand Canyon Tr.*, 311 F. Supp. 3d at 392 (noting that when a plaintiff fails to establish eligibility, "entitlement to attorney's fees and the reasonableness of the plaintiff's request need not be considered"). But the Court is skeptical that the fees and costs sought are reasonable given that over 60 percent are "fees-

## CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Motion for Attorney Fees and Costs, ECF No. 23.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: November 23, 2026

on-fees," *i.e.*, attorney fees incurred in litigating this very motion. *See* Attorney Time Records, ECF No. 23-3; Supp. Decl. of Meghan Skelton ¶¶ 2–3. ECF No. 26-1.